[920 NYS2d 108]

Evelyn Ippolito et al., Appellants, v TJC Development, LLC, et al., Respondents.

Second Department, March 22, 2011

58

APPEARANCES OF COUNSEL

*David Bolton, P.C.*, Garden City, for appellants.

**OPINION OF THE COURT**

DICKERSON, J.

## Introduction

The plaintiffs owned a home at 273 Park Avenue in Babylon (hereinafter the premises). They entered into a contract (hereinafter the agreement) with the defendant TJC Development, LLC (hereinafter TJC), pursuant to which TJC was to perform substantial home improvement renovations to the premises. The defendants Gerald Pointing and Joseph Torto were officers, directors, and/or shareholders of TJC. Ultimately, the plaintiffs terminated TJC's involvement with the project for numerous alleged failures and shortcomings. The plaintiffs demanded arbitration against TJC, proceeded to arbitration, and were awarded the sum of $121,155.32 by the arbitrator. At approximately the same time the plaintiffs filed their demand for arbitration against TJC, the plaintiffs commenced this action pursuant to Lien Law article 3-A against TJC, Pointing, and Torto. In the order appealed from, the Supreme Court, inter alia, granted that branch of the defendants' cross motion which was to dismiss the complaint pursuant to CPLR 3211 (a) (1) and (5), concluding that the plaintiffs' Lien Law claim was not viable. We disagree. Contrary to the Supreme Court's determination, the plaintiffs, as homeowners contracting for the performance of certain home improvements, were beneficiaries of the trust created by operation of Lien Law § 70, and they had standing to assert a cause of action pursuant to Lien Law article 3-A against TJC, or its officers or agents, alleging that the funds they paid to TJC were improperly diverted within the meaning of Lien Law § 72. However, as we will also discuss, the plaintiffs' cause of action insofar as asserted against TJC is barred by the doctrine of res judicata based on the prior arbitration proceeding.

## Factual and Procedural Background

### The Plaintiffs' Motion

By notice of motion dated February 4, 2009, the plaintiffs moved to certify this action as a class action, defining the class

as all beneficiaries of Lien Law article 3-A trust funds received by TJC in connection with the project, to direct the defendants to provide a list of all such beneficiaries, to establish the method of notice to class members, and for such other and further relief deemed appropriate by the motion court.

The plaintiff Anthony Ippolito (hereinafter Anthony) submitted an affidavit in support of the plaintiffs' motion, asserting that after TJC's alleged breach of the agreement, the plaintiffs were compelled to commence an arbitration proceeding against TJC. During the arbitration proceeding, the plaintiffs demonstrated that TJC breached its contractual obligation, which was to complete the relevant construction project between August 2004 and December 2004. The plaintiffs further demonstrated that TJC abandoned the project by failing to provide sufficient manpower to complete the work, and by failing to complete the project within a reasonable time.

The arbitrator, in his award, found, among other things, that TJC breached the contract. Accordingly, the arbitrator determined that the plaintiffs were justified in declaring that TJC had breached the contract, and in retaining others to complete the project. According to Anthony, the arbitrator awarded the plaintiffs the principal sum of $102,674, plus interest, for a total award of $121,155.32.

The plaintiffs alleged that the money they paid to TJC constituted trust funds pursuant to Lien Law article 3-A, and that TJC, through its corporate officers, Pointing and Torto, failed to hold and apply the trust funds for the benefit of the trust beneficiaries, including the plaintiffs, but rather misappropriated the funds. In addition, TJC failed to maintain the required records concerning the trust.

The plaintiffs also submitted the arbitrator's award in the arbitration proceeding between the plaintiffs and TJC. The award stated, in pertinent part:

> "[TJC] breached the contract by failing to adequately prosecute the project and not completing the project in a reasonably timely fashion. Therefore, [the plaintiffs] were justified in terminating the contract and retaining others to complete the project . . .
>
> "Based upon this finding, [the plaintiffs] are entitled to an award equal to the reasonable costs to complete the work under the contract, and the reason-

able value of the work needed to correct any deficient work performed by [TJC], less the amount remaining to be paid under [TJC's] contract . . .

"[TJC] is entitled to a credit for the sum remaining to be paid under its contract. Based upon the above, within 30 days of the date that the award is transmitted to counsel, [TJC] shall pay to [the plaintiffs] the sum of $121,155.32."

The amount awarded consisted of an estimated reasonable cost to complete the project in the sum of $164,340, less the balance remaining to be paid to TJC ($61,666), for a subtotal of $102,674, plus interest from December 7, 2006, through December 7, 2008, in the sum of $18,481.32, for a total award of $121,155.32.

Defendants' Cross Motion to Dismiss

By notice of cross motion dated February 10, 2009, the defendants cross-moved, inter alia, pursuant to CPLR 3211 (a) (1) and (5) to dismiss the complaint.

In support of their cross motion, the defendants observed that, in or about November 2007, the plaintiffs filed a demand for arbitration pursuant to the arbitration clause incorporated into the agreement between the plaintiffs and TJC. The demand sought only to recover damages which the plaintiffs claimed resulted from TJC's alleged breach. In the demand, the plaintiffs did not refer to any claim against TJC pursuant to Lien Law article 3-A based on diversion of trust funds. Further, during arbitration, the plaintiffs did not advance any such claim.

The defendants asserted, among other things, that the plaintiffs' claim was within the scope of the claims subject to arbitration pursuant to the arbitration clause incorporated into the agreement between the plaintiffs and TJC. Relying on the doctrines of res judicata and collateral estoppel, the defendants asserted that the plaintiffs waived their right to proceed against TJC on a "trust fund diversion" theory because they did not advance such a claim against TJC at arbitration.

The defendants asserted that TJC, and not its officers, would be the only statutory trustee of funds received from the plaintiffs under the Lien Law. The defendants contended that there could be no claim against the principals of TJC for participating in the diversion of the funds without proof that the corporation received and misapplied trust funds. Accordingly, the defendants asserted that the plaintiffs had no claim

without proving that TJC failed to apply the full amount of money received to its expenses in performing the work for which the money was paid.

Also in support of their cross motion, the defendants submitted a copy of the plaintiffs' demand for arbitration. The plaintiffs were named as the claimants, and TJC was named as the respondent. The claim was described as "[f]ailure to complete the work provided for in the contract in a timely manner and consistent with contractual deadlines and failure to perform work in a reasonable, proper and workmanlike manner." The arbitration clause was reproduced in the demand for arbitration as follows:

> "Any controversy or Claim arising out of or related to the Contract, or the breach thereof, shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator or arbitrators may be entered in any court having jurisdiction thereof, except controversies or Claims relating to aesthetic effect and those waived as provided for in Subparagraph 4.3.5."

The Plaintiffs' Reply

The plaintiffs submitted a reply affirmation in further support of their motion and in opposition to the defendants' cross motion. The plaintiffs asserted, among other things, that their trust fund claims were not barred by the prior arbitration proceeding. The plaintiffs claimed that Pointing and Torto were not parties to the arbitration, and, therefore, that they could not rely on the doctrine of res judicata to bar the plaintiffs from asserting their Lien Law article 3-A "trust fund diversion" claim against them. The plaintiffs reiterated their position that, as officers, directors, or agents of TJC, Pointing and Torto may be liable under the Lien Law regardless of whether the plaintiffs may effectively assert a claim against TJC.

As to TJC, the plaintiffs claimed that the defendants failed to demonstrate that the doctrine of res judicata barred the plaintiffs' Lien Law claim on the ground that they could have asserted that claim at the arbitration proceeding, but failed to do so. The plaintiffs further argued that the claims advanced in arbitration and those that are the subject of this action are sufficiently different to preclude the application of res judicata. The plaintiffs described the claim in the arbitration proceeding

as a breach of contract claim resulting, among other things, from TJC's failure to complete the project—a "private matter between the parties"—and stated that the measure of damages was the amount it cost them to complete the project in excess of what they would have paid TJC. They distinguished the instant action, characterizing it as a "statutory cause of action brought on behalf of all statutory trust beneficiaries for [diversion of] trust assets." The plaintiffs asserted that these claims were separate and distinct, involved different elements of proof, a different measure of damages, and observed that this action must be brought in a representative capacity.

The plaintiffs also observed that they could not have named the individual defendants as respondents in the arbitration proceeding. Accordingly, they argued, it would have been "nonsensical" to require them to pursue a Lien Law claim against TJC in the arbitration proceeding, and then require them to assert the same claim against the individual defendants in a separate action.

### The Order Appealed From

In the order entered October 21, 2009, the Supreme Court, Nassau County, granted that branch of the defendants' cross motion which was pursuant to CPLR 3211 (a) (1) and (5) to dismiss the complaint, and denied, as academic, the plaintiffs' motion, inter alia, to certify this action as a class action pursuant to CPLR article 9 (2009 NY Slip Op 33253[U] [2009]).

The Supreme Court concluded that the claims at issue here and those addressed in the arbitration proceeding involving breach of contract were the same, as both arose out of TJC's alleged nonperformance of its agreement with the plaintiffs. The claims only differed in the legal theory the plaintiffs employed and the remedy sought. Accordingly, because the claims were the same, the Supreme Court concluded that the plaintiffs were barred by the doctrine of res judicata from seeking to recover trust funds from TJC. However, the Supreme Court stated that this did not necessarily prevent the plaintiffs from asserting their claim against Pointing and Torto, who were not parties to the agreement and, who, under the circumstances, could not have been compelled to participate in the arbitration. As such, Pointing and Torto were not in a position to raise a defense based on the doctrine of res judicata.

With regard to the applicability of Lien Law article 3-A, the Supreme Court reviewed the purpose of that article. The

Supreme Court determined that, while the plaintiffs may have some cause of action against the defendants based on the circumstances here, their Lien Law claim was not viable. The Supreme Court, upon considering the cases cited by each party in support of their respective positions, concluded that the case law did not support the plaintiffs' argument that they had a right to assert a claim pursuant to the Lien Law based on the facts of this case but, rather, suggested that the plaintiffs may not pursue such a claim. Accordingly, the Supreme Court concluded that the plaintiffs' Lien Law article 3-A cause of action was not viable.

## Analysis

### Lien Law Article 3-A

■ On appeal, the plaintiffs assert that the Supreme Court erred in granting that branch of the defendants' cross motion which was to dismiss the complaint. The plaintiffs argue that, as owners, they are beneficiaries of the trust funds created by operation of Lien Law § 70, and, accordingly, they have standing to assert a cause of action pursuant to Lien Law article 3-A against the defendants alleging that the funds they paid to TJC were improperly diverted within the meaning of Lien Law § 72. The defendants did not file a brief on appeal. We agree with the plaintiffs, and hold that the Supreme Court erred in concluding that the plaintiffs lacked standing to assert their Lien Law article 3-A cause of action against the defendants, or that the claim, as asserted by these plaintiffs, was not viable.

"Article 3-A of the Lien Law creates 'trust funds out of certain construction payments or funds to assure payment of subcontractors, suppliers, architects, engineers, laborers, as well as specified taxes and expenses of construction' " (*Aspro Mech. Contr. v Fleet Bank*, 1 NY3d 324, 328 [2004], quoting *Caristo Constr. Corp. v Diners Fin. Corp.*, 21 NY2d 507, 512 [1968]; *see* Lien Law §§ 70, 71). "[T]he primary purpose of article 3-A and its predecessors [is] to ensure that those who have directly expended labor and materials to improve real property [or a public improvement] at the direction of the owner or a general contractor receive payment for the work actually performed" (*Aspro Mech. Contr. v Fleet Bank*, 1 NY3d at 328 [internal quotation marks omitted]; *see Matter of RLI Ins. Co., Sur. Div. v New York State Dept. of Labor*, 97 NY2d 256, 264 [2002]).

Section 70 of the Lien Law defines trusts created thereunder. That section provides, in pertinent part,

"The funds described in this section . . . received by a contractor under or in connection with a contract for an improvement of real property, or home improvement, or a contract for a public improvement in this state, or received by a subcontractor under or in connection with a subcontract made with the contractor for such improvement of real property including a home improvement contract or public improvement or made with any subcontractor under any such contract, and any right of action for any such funds due or earned or to become due or earned, shall constitute assets of a trust for the purposes provided in section seventy-one of this chapter." (Lien Law § 70 [1].)

"An article 3-A trust commences 'when any asset thereof comes into existence' and continues until all trust claims have been paid or discharged, or all assets have been applied for trust purposes" (*Matter of RLI Ins. Co., Sur. Div. v New York State Dept. of Labor*, 97 NY2d at 262, quoting Lien Law § 70 [3]).

"Under a home improvement contract, payments received from an owner by a home improvement contractor prior to the substantial completion of work under the contract shall be deposited within five business days thereafter by the recipient in an escrow account in a bank, trust company, savings bank, or state or federal savings and loan association, located in this state. . . . Such deposit or deposits shall remain the property of such owner except as otherwise provided herein" (Lien Law § 71-a [4] [a]).

"Such deposit or deposits shall remain the property of the owner or such bond or contract of indemnity or irrevocable letter of credit continued in effect until (i) the proper payment, transfer or application of such deposits by the contractor to the purposes of the home improvement contract under the schedule of payments provided therein; or (ii) the default or breach of the owner excusing the recipient's performance of the terms of the home improvement contract, but only to the extent of any reasonable liquidated damage amount as defined in section 2-718 of the uniform commercial code and set forth in the contract, and only after seven days prior writ-

ten notice to the owner; or (iii) substantial perform-ance of the contract" (Lien Law § 71-a [4] [d]).

Synthesizing the foregoing sections of the Lien Law,

"contractors who receive money in advance for the construction of home improvements are required to place the money in a bank account and hold the money as the property of the owner until the money is paid for purposes of the home improvement. The funds deposited remain the property of the owner until: (1) the proper payment by the contractor for the purposes of the home improvement project; or (2) default or breach by the owner which excuses the contractor's performance, but only to the extent of any reasonable liquidated damage amount and only after 7 days prior written notice to the owner; or (3) substantial performance of the contract" (*Stern v H. DiMarzo, Inc.*, 19 Misc 3d 1144[A], 2008 NY Slip Op 51163[U], *20 [2008] [citations omit-ted]).

"The trust assets of which a contractor or subcon-tractor is trustee shall be held and applied for the following expenditures arising out of the improve-ment of real property, including home improvement or public improvement and incurred in the perform-ance of his contract or subcontract, as the case may be: . . .

(f) payment to which the owner is entitled pursuant to the provisions of section seventy-one-a of this chapter" (Lien Law § 71 [2] [f]).

"Any transaction by which any trust asset is paid, transferred or applied for any purpose other than a purpose of the trust as stated in subdivision one or subdivision two of section seventy-one, before pay-ment or discharge of all trust claims with respect to the trust, is a diversion of trust assets, whether or not there are trust claims in existence at the time of the transaction, and if the diversion occurs by the voluntary act of the trustee or by his consent such act or consent is a breach of trust" (Lien Law § 72 [1]).

Thus, "Lien Law article 3-A mandates that once a trust comes into existence, its funds may not be diverted for non-trust

purposes" (*Matter of RLI Ins. Co., Sur. Div. v New York State Dept. of Labor*, 97 NY2d at 263). "Use of trust assets for any purpose other than the expenditures authorized in Lien Law § 71 before all trust claims have been paid or discharged constitutes an improper diversion of trust assets, regardless of the propriety of the trustee's intentions" (*id.*). "Only after all trust claims have been paid or discharged does a beneficial interest in the remaining balance vest in the trustee owner or contractor" (*id.*).

Contrary to the Supreme Court's determination, as a general matter, the foregoing provisions enable the plaintiffs, as owners, to assert a cause of action pursuant to Lien Law article 3-A against the defendants. Whether the doctrine of res judicata bars such a claim insofar as asserted against TJC, however, is discussed below.

It is undisputed that the plaintiffs are owners within the meaning of Lien Law article 3-A. It is undisputed that the funds paid by the plaintiffs to TJC qualified as trust funds within the meaning of Lien Law article 3-A (*see* Lien Law § 70 [1]). In the complaint, the plaintiffs alleged that the defendants each participated in diverting the trust assets in violation of Lien Law article 3-A, and specifically Lien Law § 72 (1). As the plaintiffs argue, pursuant to Lien Law § 71, the trust assets of which TJC was a trustee were to be held and applied to, among other things, "payment to which the owner is entitled pursuant to the provisions of section seventy-one-a of this chapter" (Lien Law § 71 [2] [f]). Under Lien Law § 71-a, those funds remained the property of the owners, the plaintiffs here, until the proper payment of such funds by the contractor to the purposes of the home improvement contract, breach by the owners relieving the contractor from its obligation to perform (not alleged here), or substantial performance of the contract (*see* Lien Law § 71-a [4] [d]).

Thus, under these provisions, the plaintiffs have standing to proceed with an action pursuant to Lien Law article 3-A, and, contrary to the Supreme Court's determination, as alleged, the plaintiffs' action is viable. We note that, theoretically, it may be that the project reached substantial completion while TJC was involved, but there is no proof of substantial completion in the record, and the defendants did not assert that they substantially completed the project.

The cases on which the plaintiffs rely to support their contention that they may assert a Lien Law article 3-A cause of action

against the defendants support their claim. In *People v Hollowell* (168 AD2d 970 [1990]), the Appellate Division, Fourth Department (hereinafter the Fourth Department), reinstated a count of an indictment charging the defendant with larceny under the Lien Law. In so doing, the Fourth Department observed,

> "Article 3-A of the Lien Law was amended by Laws of 1987 (ch 421), applying to contracts entered into after March 1, 1988, to protect consumers who contract for home improvements. The amendment requires contractors who receive money in advance for the construction of home improvements to place the money in a bank account and hold the money as the property of the owner until the money is paid for the purposes of the home improvement (Lien Law § 71-a [4]). Lien Law § 71 (2) was amended to add a new paragraph (f), which added another purpose for which trust assets are to be held: 'payment to which the owner is entitled' under the trust provisions relating to advance payments made to contractors for home improvements. Thus, under the 1987 amendment, 'trust claims' were extended to include claims of owners to funds advanced by them to contractors for the construction of home improvements. Because Gerald Daly contracted with defendant after the effective date of the new amendment, he had a valid trust claim against the moneys advanced by him for his home improvement and the misappropriation of the money and the failure to pay the trust claim of Daly may constitute the crime of larceny under Lien Law § 79-a" (*People v Hollowell*, 168 AD2d at 971).

Indeed, the Bill Jacket for the 1987 amendments, discussed in *Hollowell*, is replete with references to the fact that the purpose of the relevant amendments was to protect consumers and homeowners. For example, in a letter to Counsel for the Governor, Paul Kehoe, then-Chairman of the Senate Standing Committee on Consumer Protection and the sponsor of the bill in the Senate, described the bill as "an attempt to provide a meaningful measure of protection for our citizens" (Letter from L. Paul Kehoe, July 24, 1987, at 1, Bill Jacket, L 1987, ch 421, at 6). Kehoe continued, "this bill represents a significant step toward improving the protection of the state's consumers and does so in a fashion which provides little, if any, burden on le-

gitimate contractors" (Letter from L. Paul Kehoe, July 24, 1987, at 2, Bill Jacket, L 1987, ch 421, at 7). In a memorandum in support of the bill, then-Attorney General Robert Abrams stated that the 1987 amendment "fills a long-standing and unwarranted gap in the State's law respecting protection of the public against widespread home improvement fraud. As such, it represents an important advance in consumer protection" (Robert Abrams, Attorney General Mem in Support, at 3, Bill Jacket, L 1987, ch 421, at 27).

*Stern v H. DiMarzo, Inc.* (19 Misc 3d 1144[A], 2008 NY Slip Op 51163[U] [2008]), on which the plaintiffs also rely, contains an extensive and persuasive discussion of the applicability of Lien Law article 3-A to an action such as this, including a discussion of standing. The discussion concerning standing emphasizes the amendment of the Lien Law "to protect consumers *who contract for home improvements*" (2008 NY Slip Op 51163[U], *20). The court in that case specifically addressed the amendment to Lien Law § 71-a (4) pertaining to the fact that the trust funds remain the owners' property until one of three events occurs, as set forth above, as well as the addition of subdivision (2) (f) to Lien Law § 71 to provide that

> "[t]he trust assets of which a contractor or subcontractor is trustee shall be held and applied for the following expenditures arising out of the improvement of real property, including home improvement or public improvement and incurred in the performance of his contract or subcontract, as the case may be: . . .

> "payment to which the owner is entitled pursuant to the provisions of section seventy-one-a of this chapter."

"Consequently, where a home improvement contract is entered into after the March 1, 1998 [*sic*] effective date of the amendments, a home owner has a valid trust claim against the moneys advanced by the owner for a home improvement" (*Stern v H. DiMarzo, Inc.*, 2008 NY Slip Op 51163[U], *20).

To the extent that the defendants argued in the Supreme Court that the Lien Law claim was not the plaintiffs' primary claim in *Stern*, or was somehow not "central to the Court's holding," in order to distinguish that case, that contention is without merit. The court's analysis in *Stern* is persuasive, and the fact that the Lien Law cause of action was but one of many

causes of action asserted in that case is a distinction without significance here.

To the extent the defendants relied on *Langston v Triboro Contr., Inc.* (44 AD3d 365 [2007]) before the Supreme Court, that case is readily distinguishable from the facts presented here. In *Langston*, the plaintiff's claim was solely "that he is entitled to return of the money paid to defendant simply because the money, paid over time with checks, admittedly was never deposited into an escrow account in a bank, as required by Lien Law § 71-a (4), but instead was immediately cashed" (*id.* at 365). Here, the plaintiffs' claim relates to the alleged diversion of trust funds, not the mere manner in which the funds were handled.

Whether the plaintiffs may assert their Lien Law article 3-A cause of action against the two individual defendants, Pointing and Torto, presents an issue of first impression before this Court.

> "Any trustee of a trust arising under this article, and any officer, director or agent of such trustee, who applies or consents to the application of trust funds received by the trustee as money or an instrument for the payment of money for any purpose other than the trust purposes of that trust, as defined in section seventy-one, is guilty of larceny and punishable as provided in the penal law if . . .

> "(b) such funds were received by the trustee as contractor or subcontractor, as such terms are used in article three-a of this chapter, and the trustee fails to pay, within thirty-one days of the time it is due, any trust claim arising at any time" (Lien Law § 79-a [1] [b]).

While it is not expressly stated in Lien Law § 79-a (1) (b) that the individual officers or agents of a corporation, as Pointing and Torto are alleged to be, may be liable in a civil action pursuant to Lien Law article 3-A for the improper diversion of trust funds, there is authority for this position. In *Fleck v Perla* (40 AD2d 1069 [1972]), the Fourth Department determined that a corporation's officers could be liable to the beneficiary of a trust for the diversion of the trust funds. The Fourth Department noted that "the Lien Law does not specifically provide for personal liability on the part of an officer of a corporate transferee" (*id.* at 1070). However, in determining that an offi-

cer could be liable for the diversion of trust funds, the Court relied on, among other things, the principle that "[a]n officer or agent of a corporation is personally liable for his acts which constitute a conversion of the property of a third person; it is no answer to such liability that the act was done while the officer or agent was acting for the corporation" (*id.* [internal quotation marks and citation omitted]; *see South Carolina Steel Corp. v Miller*, 170 AD2d 592 [1991]). We find this conclusion persuasive.

Accordingly, we conclude that the plaintiffs, as a general matter, have standing to assert a Lien Law article 3-A claim against the defendants. Contrary to the Supreme Court's determination, their claim is prima facie viable.

Res Judicata

■ The Supreme Court also concluded that the plaintiffs' claim insofar as asserted against TJC was barred by the doctrine of res judicata based on the prior arbitration proceeding. The plaintiffs do not expressly argue that their claim insofar as asserted against TJC is not barred by res judicata. However, they do request that the order appealed from be reversed in its entirety. Accordingly, the Supreme Court's determination that the plaintiffs' claim insofar as asserted against TJC is barred by the doctrine of res judicata is properly before this Court. We conclude that the Supreme Court properly determined that the plaintiffs' claim insofar as asserted against TJC is barred by the doctrine of res judicata, as the plaintiffs should have asserted this cause of action, arising out of the same transaction or series of transactions, in the prior arbitration proceeding.

> "The doctrine of res judicata operates to preclude the reconsideration of claims actually litigated and resolved in a prior proceeding, as well as claims for different relief against the same party which arise out of the same factual grouping or transaction, and which should have or could have been resolved in the prior proceeding" (*Mahler v Campagna*, 60 AD3d 1009, 1011 [2009]).

"Under the transactional analysis approach to res judicata, 'once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy' " (*CRK Contr. of Suffolk v Brown & Assoc.*, 260 AD3d 530, 530 [1999], quoting *O'Brien v City of Syracuse*, 54 NY2d 353, 357 [1981]; *see Silberstein, Awad & Miklos, P.C. v Spencer, Maston & McCarthy, LLP*, 43 AD3d 902, 903 [2007]).

"The doctrine of collateral estoppel bars relitigation of an issue which has necessarily been decided in a prior action and is determinative of the issues disputed in the present action, provided that there was a full and fair opportunity to contest the decision now alleged to be controlling" (*Mahler v Campagna*, 60 AD3d at 1011).

"The doctrines of res judicata and collateral estoppel apply to arbitration awards with the same force and effect as they apply to judgments of a court" (*id.*).

■ As the plaintiffs observed before the Supreme Court, the doctrine of collateral estoppel is inapplicable to the circumstances here, as the plaintiffs' Lien Law claim was not an issue necessarily decided in the prior arbitration proceeding which is determinative of the issues disputed in this action, and the parties did not have a full and fair opportunity to contest matters related to that issue (*id.*).

As to the doctrine of res judicata, the plaintiffs and TJC were parties to the prior arbitration proceeding. Moreover, the issues presented in the prior arbitration proceeding and the plaintiffs' Lien Law article 3-A cause of action asserted here constitute claims arising out of the same transaction or series of transactions, even though they may be based upon different theories, and even though the plaintiffs purport to seek a different remedy.

In the prior arbitration proceeding, the plaintiffs sought to recover based on TJC's alleged "[f]ailure to complete the work provided for in the contract in a timely manner and consistent with contractual deadlines and failure to perform work in a reasonable, proper and workmanlike manner." The arbitrator determined that TJC breached its contract with the plaintiffs, and, thus, that the plaintiffs were "entitled to an award equal to the reasonable costs to complete the work under the contract, and the reasonable value of the work needed to correct any deficient work performed by [TJC], less the amount remaining to be paid under [TJC's] contract."

Here, the plaintiffs seek to recover trust funds improperly diverted by the defendants in connection with the same home improvement project. The precise remedy the plaintiffs seek in this action is different, as is the legal theory pursuant to which the plaintiffs hope to recover. However, it is clear that both claims arise out of the same series of facts and transactions, and involve largely the same determinative issues. Accordingly, because the plaintiffs' Lien Law article 3-A claim insofar as as-

serted against TJC should have or could have been resolved in the prior arbitration proceeding, the plaintiffs are barred by the doctrine of res judicata from asserting their claim against TJC here (*see O'Brien v City of Syracuse*, 54 NY2d at 357; *Kaufman v Village of Mamaroneck*, 18 AD3d 505, 505 [2005]; *Town of New Windsor v New Windsor Volunteer Ambulance Corps, Inc.*, 16 AD3d 403, 405 [2005]; *Fogel v Oelmann*, 7 AD3d 485, 486 [2004]; *Matter of Miller v Kozakiewicz*, 300 AD2d 399, 400 [2002]).

## Conclusion

It is clear to this Court that, contrary to the Supreme Court's determination, as a general matter, the plaintiffs may assert against the defendants a cause of action pursuant to Lien Law article 3-A, and their claim is prima facie viable. However, their cause of action insofar as asserted against TJC is barred by the doctrine of res judicata. Accordingly, the order is modified, on the law, by deleting the provision thereof granting those branches of the defendants' cross motion which were to dismiss the complaint insofar as asserted against the defendants Gerald Pointing and Joseph Torto, and substituting therefor a provision denying those branches of the defendants' cross motion, and by deleting the provision thereof denying the plaintiffs' motion as academic; as so modified, the order is affirmed, and the matter is remitted to the Supreme Court, Nassau County, for a determination on the merits of the plaintiffs' motion.

SKELOS, J.P., ENG and LOTT, JJ., concur.

Ordered that the order is modified, on the law, (1) by deleting the provision thereof granting those branches of the defendants' cross motion which were to dismiss the complaint insofar as asserted against the defendants Gerald Pointing and Joseph Torto, and substituting therefor a provision denying those branches of the defendants' cross motion, and (2) by deleting the provision thereof denying the plaintiffs' motion as academic; as so modified, the order is affirmed, with costs payable to the plaintiffs by the defendants Gerald Pointing and Joseph Torto, and the matter is remitted to the Supreme Court, Nassau County, for a determination on the merits of the plaintiffs' motion.