■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM COOK, Appellant. [9 NYS3d 385]—

Appeals by the defendant from (1) an order of the Supreme Court, Queens County (Wong, J.), dated April 22, 2013, which denied his motion to dismiss this Sex Offender Registration Act (Correction Law art 6-C) proceeding, and (2) an order of the same court dated May 8, 2013, which, after a hearing, designated him a level three sex offender pursuant to Correction Law article 6-C.

Ordered that the order dated April 22, 2013, is reversed, on the law, without costs or disbursements, the defendant's motion to dismiss this proceeding is granted, and the order dated May 8, 2013, is vacated; and it is further,

Ordered that the appeal from the order dated May 8, 2013, is dismissed as academic, without costs or disbursements, in light of the determination on the appeal from the order dated April 22, 2013.

The defendant pleaded guilty to multiple counts of sexual offenses committed against four children in Richmond County and Queens County in 1997 and 1998. The counts were charged in three separate superior court informations, two of which were filed in Queens County and one of which was filed in Richmond County. The respective District Attorney Offices in the two counties coordinated the defendant's sentences to run concurrently. Prior to the defendant's release from prison in 2012, the Board of Examiners of Sex Offenders prepared one case summary and one risk assessment instrument (hereinafter RAI) pursuant to the Sex Offender Registration Act (Correction Law art 6-C [hereinafter SORA]), based on all the crimes of which the defendant had been convicted in both counties. On November 19, 2012, the Supreme Court, Richmond County, conducted a SORA hearing, after which it assessed a total of 125 points on the defendant's RAI and designated him a level three sex offender.

Thereafter, upon receiving notice that a SORA hearing was to be held before the Supreme Court, Queens County, the defendant filed a motion to dismiss the proceeding as unauthorized by SORA and barred by res judicata. The court denied the motion. We agree with the defendant that the court should have granted the motion.

"Any statute or regulation . . . must be interpreted and enforced in a reasonable . . . manner in accordance with its manifest intent and purpose" (*Matter of Sabot v Lavine*, 42

NY2d 1068, 1069 [1977]). A statutory interpretation that is "contrary to the dictates of reason or leads to unreasonable results is presumed to be against the legislative intent" (McKinney's Cons Laws of NY, Book 1, Statutes § 143, Comment at 288). "[W]hen presented with a question of statutory interpretation, [the court's] primary consideration is to ascertain and give effect to the intention of the Legislature" (*Samiento v World Yacht Inc.*, 10 NY3d 70, 77 [2008] [internal quotation marks omitted]; *see Matter of DaimlerChrysler Corp. v Spitzer*, 7 NY3d 653, 660 [2006]).

The legislature's stated goals in enacting SORA were "to protect the public from 'the danger of recidivism posed by sex offenders,' to assist the 'criminal justice system to identify, investigate, apprehend and prosecute sex offenders,' and to comply with the Federal Crime Control Act (Legislative Findings and Intent, L 1995, ch 192, § 1, McKinney's Cons Laws of NY, Book 10B, Correction Law § 168, 1997-1998 Pocket Part, at 83)" (*People v Stevens*, 91 NY2d 270, 275 [1998]). "To achieve these declared and promulgated objectives, [SORA] details a registration and notification system for individuals convicted of sex offenses based on a three-tier classification regime. Conviction of any of the enumerated sex offenses automatically classifies an individual as a 'sex offender' (*see,* Correction Law § 168-d [1]; *see also,* § 168-a [1], [2]). All 'sex offenders' must comply with the mandatory minimal registration and notification requirements of the statute (*see,* Correction Law §§ 168-f, 168-*l* [6]; § 168-n)" (*id.* at 275).

"Under SORA, the Board [of Examiners of Sex Offenders] 'shall develop guidelines and procedures to assess the risk of a repeat offense by [a] sex offender and the threat posed to the public safety' (Correction Law § 168-*l* [5]) . . . Based on the guidelines, the Board must make a 'recommendation' regarding the offender's risk level classification (Correction Law § 168-*l* [6]). '[A]pplying the guidelines,' a reviewing court at a SORA hearing must determine the offender's risk level classification by either accepting the Board's recommendation or rejecting that recommendation in favor of a different risk level classification supported by the evidence presented at the hearing (Correction Law § 168-n [2], [3])" (*People v Gillotti*, 23 NY3d 841, 852 [2014]). "The court shall [then] render an order setting forth its determinations and the findings of fact and conclusions of law on which the determinations are based" and submit such order to the Division of Criminal Justice Services (hereinafter the Division) (Correction Law § 168-d [3]). The Division, in turn, is responsible for establishing and maintain-

ing the registry, and making the registry available to the entities listed in the statute (*see* Correction Law § 168-b [1]). It is the designation, as sexually violent offender, predicate sex offender, sexual predator, or no designation, in combination with the risk level classification, that determines the length of an offender's registration, as well as the amount of the offender's information, e.g., residential address and place of employment, to be made available to the community (*see* Corrections Law § 168-b [1]).

The SORA Risk Assessment Guidelines and Commentary to the Sex Offender Registration Act (hereinafter the Guidelines), to which the SORA court must adhere to in rendering its determination, define "Current Offenses" as follows: "The Current Offense[s] section should be completed on the basis of all of the crimes that were part of the instant disposition. For example, if the offender pleaded guilty to two indictments in two different counties, both indictments should be considered in scoring the section. If one indictment involved one victim and the other involved two victims and if there is clear and convincing evidence that all three were abused, the offender should receive 30 points (three or more victims) in category 3" (Sex Offender Registration Act: Risk Assessment Guidelines and Commentary at 5-6 [2006]).

Here, as in the example provided above, the defendant pleaded guilty to charges contained in accusatory instruments filed in two different counties, two in Queens County and one in Richmond County. Nonetheless, as explained above, all of those offenses constituted "Current Offenses" for the purpose of determining the defendant's risk level pursuant to SORA and, indeed, were considered as such by the Board of Examiners of Sex Offenders and the Supreme Court, Richmond County, in conducting their SORA assessment.

The only reasonable interpretation of the statute and Guidelines, and the one that most effectuates SORA's purpose, is that only one SORA "disposition" may be made per "Current Offense," or group of "Current Offenses." Once a court has rendered "an order setting forth its determinations and the findings of fact and conclusions of law on which the determinations are based" and submitted such order to the Division (Correction Law § 168-d [3]), the Division has all the information it needs to create a file for the defendant and add it to the registry (*see* Correction Law § 168-b [1]). In this case, once the Division received the SORA order from Richmond County, it had the information it needed to serve SORA's goal of "protect[ing] the public from" this particular sex offender (*People v Stevens*, 91 NY2d at 275).

Additionally, as the defendant correctly contends, the second SORA proceeding in Queens County was barred by the doctrine of res judicata. "[O]nce a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy" (*O'Brien v City of Syracuse*, 54 NY2d 353, 357 [1981]; *see Matter of Reilly v Reid*, 45 NY2d 24, 29-30 [1978]; *Ippolito v TJC Dev., LLC*, 83 AD3d 57, 71 [2011]). "It is blackletter law that a valid final judgment bars future actions between the same parties on the 'same cause of action' " (*Matter of Reilly v Reid*, 45 NY2d at 27). "The primary purposes of res judicata are grounded in public policy concerns and are intended to ensure finality, prevent vexatious litigation and promote judicial economy" (*Xiao Yang Chen v Fischer*, 6 NY3d 94, 100 [2005]; *see Matter of Reilly v Reid*, 45 NY2d at 28; *Brooks v Haidt*, 59 AD3d 233, 235 [2009]). Other jurisdictions have applied the doctrine of res judicata to sex offender registration proceedings (*e.g. State v Walker*, 2012 WL 2614595, 2012 Ohio App LEXIS 2744 [Ct App 2012] [res judicata barred defendant from obtaining further trial court review of his offender classification under Ohio's version of SORA]; *Matter of R.A.*, 395 NJ Super 565, 569, 930 A2d 438, 440 [2007] [res judicata barred reassessment of a "static criterion" on the New Jersey equivalent of the RAI, thereby removing the basis relied upon by the lower court for modifying defendant's previous notification level]).

Here, as discussed above, the crimes and the evidence before the Queens County SORA court were identical to those that were before the Richmond County SORA court, as were the parties and the issues to be determined. Accordingly, the Supreme Court erred in denying the defendant's motion to dismiss this SORA proceeding.

In light of the foregoing, the defendant's appeal from the order dated May 8, 2013, designating him a level three sex offender, has been rendered academic. In any event, illustrating the very points discussed above, the identical issues and arguments were raised in the defendant's related appeal from the SORA order issued by the Supreme Court, Richmond County, and are analyzed in our decision and order on the related appeal from that order (*see People v Cook*, 128 AD3d 927 [2015] [decided herewith]). Skelos, J.P., Dillon, Austin and Hinds-Radix, JJ., concur.