This opinion is uncorrected and subject to revision before
publication in the New York Reports.
--------------------------------------------------------------------

No. 30
The People &c.,
          Appellant,
        v.
William Cook,
          Respondent.


          Edward D. Saslaw, for appellant.
          Lisa Napoli, for respondent.


GARCIA, J.:

          In this case, we are asked to determine whether

sentencing courts in two different counties may each render Sex

Offender Registration Act (SORA) risk level determinations based

upon a single set of "Current Offense[s]" forming the basis of a

- 1 -

Risk Assessment Instrument (RAI).  We hold that, under these circumstances, only one determination is permitted and, accordingly, we affirm the order of the Appellate Division.

I.

Defendant committed multiple sexual offenses against four children -- three boys under the age of eleven, and a young girl suffering from cerebral palsy -- in both Queens and Richmond Counties.[1]  Prosecution was coordinated between the two District Attorneys' offices, and charges were brought and pleas negotiated in each county.

In Richmond County, defendant pleaded guilty to first-degree sodomy committed against one seven-year-old boy.  Pursuant to a plea agreement, Richmond County Supreme Court sentenced defendant to a term of 7 1/2 to 15 years' imprisonment, to run concurrently with defendant's Queens County sentence.

In Queens County, defendant pleaded guilty to second-degree rape of the 12-year-old girl, and to first-degree attempted sodomy and two counts of first-degree sexual assault as to the three remaining victims.  During the plea allocution, the People agreed not to pursue additional charges as to a fifth named victim whom defendant confessed he also sexually abused.  Pursuant to a second plea agreement, Queens County Supreme Court sentenced defendant to 15 years' imprisonment, to run concurrently with lesser terms and with defendant's Richmond

---

[1] See People v Cook [No. 31, decided herewith].

County sentence, followed by four years' post-release supervision.

In August 2012, in anticipation of defendant's scheduled November 22, 2012 release, the Board of Examiners of Sex Offenders (the Board) prepared a case summary and RAI that evaluated defendant's risk of reoffending and the harm that would be inflicted if he did reoffend. The Board's risk assessment recommendation was based on a review of defendant's file, including pre-sentence and probation reports from both the Queens and Richmond County offenses. The Board assessed 125 points and classified defendant "at a level III (High) risk for re-offending, with absolutely no basis for departure." Pursuant to its obligation under SORA, the Board notified the sentencing courts and District Attorneys in both counties of its recommendation and forwarded defendant's completed RAI and case summary (see Correction Law § 168-l [6]).

In September 2012, the Richmond County sentencing court conducted a SORA risk assessment hearing. The record before that court contained information regarding the conduct underlying all of the offenses committed by defendant in both counties -- including materials provided by the Queens District Attorney -- even though defendant pleaded guilty only to abusing a single victim in Richmond County. Following the hearing, the Richmond

County SORA court assessed defendant 125 points[2] and adjudicated him a level III, sexually violent offender.

In late November 2012, shortly after the Richmond County adjudication, the Queens County sentencing court notified counsel and defendant that it would conduct an additional risk assessment hearing. Defendant moved to dismiss the proceeding, arguing that it was duplicative of the Richmond County risk level determination and that it was barred by res judicata. In response, the People contended that SORA requires each sentencing court to render an independent adjudication and that res judicata was not a bar to compliance with that obligation.

In April 2013, the Queens County sentencing court denied defendant's motion to dismiss the Queens County SORA proceeding. The court ruled it was (1) required by statute (Correction Law § 168-d [1] [a] and 168-d [3]) to assess every offender convicted in that court, and (2) not bound by the Richmond County adjudication because that county's SORA-qualifying offenses were different, and because the entire adjudication process was "case and fact specific."

A Queens County SORA hearing was subsequently held, and defendant was assessed 105 points, making him a presumptive level two offender. Nonetheless, the court adjudicated defendant a level three, sexually violent offender after granting the

---

[2] The basis for the court's determination is described further in People v Cook [No. 31, decided herewith].

People's request for an upward departure based on numerous aggravating factors.

On appeal, defendant again argued that the Queens County adjudication was not authorized by statute and was barred by res judicata. The Appellate Division agreed and reversed the Queens County SORA court's order denying defendant's motion to dismiss the SORA risk assessment hearing (128 AD3d 928, 929 [2nd Dept 2015]). The court concluded that "[t]he only reasonable interpretation of the statute and Guidelines, and the one that most effectuates SORA's purpose, is that only one SORA 'disposition' may be made per 'Current Offense,' or group of 'Current Offenses'" (id. at 931). The Appellate Division also held that the doctrine of res judicata barred the Queens County SORA proceedings (id. at 932).

This Court granted the People leave to appeal (26 NY3d 908 [2015]) and we now affirm.

II.

In enacting SORA, the Legislature found that "the danger of recidivism posed by sex offenders, especially those sexually violent offenders who commit predatory acts characterized by repetitive and compulsive behavior" made "protection of the public from these offenders . . . of paramount concern or interest to the government" (L 1995, c 192, § 1). To achieve these goals, SORA created a statewide "registration and notification system for individuals convicted of sex offenses

based on a three-tier classification regime" administered by the
New York State Division of Criminal Justice Services (People v
Stevens, 91 NY2d 270, 275 [1998]).  "The offender's risk level
determines the amount of information that can be disseminated
about him to the public under the Act's notification procedures"
(SORA Risk Assessment Guidelines and Commentary at 1 [2006]
[hereinafter Guidelines]).

        The sentencing court, based upon a review of the record
and the Board's recommendation, ultimately determines an
offender's appropriate notification level (see Correction Law §
168-n).  We have made clear, however, that "a SORA risk-level
determination is not part of a defendant's sentence.  Rather, it
is a collateral consequence of a conviction for a sex offense
designed not to punish," but to further the statutory goal of
protecting the public (People v Windham, 10 NY3d 801, 802 [2008]
[internal citation omitted]).

        Where, as here, a single RAI addressing all relevant
conduct is prepared, the goal of assessing the risk posed by the
offender is fulfilled by a single SORA adjudication.  To hold
otherwise -- that is, to permit multiple risk level
determinations based on conduct included in a single RAI -- would
result in redundant proceedings and constitute a waste of
judicial resources.  Here, for instance, once the Division of
Criminal Justice Services was notified of the Richmond County
SORA court's determination, "it had the information it needed to

serve SORA's goal of 'protect[ing] the public from' this
particular sex offender" (128 AD3d at 932, citing Stevens, 91
NY2d at 275).  Any further proceedings then became duplicative.

        The People argue that certain statutory language --
namely, language directing what the sentencing court "shall" do
with respect to determining predator status and level of
notification -- mandates that each individual sentencing court
perform the specified actions (see Correction Law §§ 168-d [3];
168-n [1]-[3]).  However, contrary to the People's claim, this
language does not pertain to duplicate risk level determinations
-- based on conduct comprising the current offenses encompassed
in a single RAI -- rendered by multiple sentencing courts.  The
only reference to conduct spanning more than one county is found
in the SORA Guidelines, which directs the Board to complete a
single RAI that includes all relevant conduct:

> "The Current Offense[s] section should be
> completed on the basis of all of the crimes
> that were part of the instant disposition.
> For example, if the offender pleaded guilty
> to two indictments in two different counties,
> both indictments should be considered in
> scoring the section" (Guidelines at 5-6,
> General Principles No. 8).

It follows that one -- and only one -- sentencing court should
render a risk level determination based on all conduct contained
in the RAI.  This interpretation also prevents multiple
sentencing courts from reaching conflicting conclusions based on
the same RAI.

        The People also expressed concern about what would

happen if the convictions in the jurisdiction in which the SORA determination was rendered were ultimately reversed and vacated. In that event, the court in the other jurisdiction, having sentenced the defendant for another conviction included in the "current offenses" in the RAI, would be free to conduct a de novo hearing and render a determination based on the remaining SORA-qualifying offenses (see Correction Law § 168-l [8]; see also People v Gallagher, 129 AD3d 1252 [3d Dept 2015]; People v Wilkes, 53 AD3d 1073 [4th Dept 2008]).

In light of our holding, it is imperative that prosecuting offices coordinate their submissions to the sentencing court that is adjudicating an offender's risk level in order to ensure that all relevant information -- from all relevant jurisdictions -- is before that court (see Correction Law § 168-n [3]).

Given this holding, we need not address defendant's res judicata arguments.  Accordingly, the order of the Appellate Division should be affirmed.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order affirmed.  Opinion by Judge Garcia.  Chief Judge DiFiore and Judges Rivera, Abdus-Salaam, Stein, Fahey and Wilson concur.

Decided March 30, 2017