778 A.2d 508 (2001)
343 N.J. Super. 219
In the MATTER OF REGISTRANT H.M.
Superior Court of New Jersey, Appellate Division.
Argued July 18, 2001.
Decided July 18, 2001.
*509 Before Judges ANTELL and BILDER.
The opinion of the court was delivered by BILDER, J.A.D. (retired and temporarily assigned on recall).
This is an appeal by a registrant, H.M., from a Megan's Law, N.J.S.A. 2C:7-1 to -11, order of the Law Division designating him as a Tier 2/Moderate Risk offender and ordering notification appropriate to that risk assessment. On this appeal we are asked to consider the parameters of the judicial review hearing of the prosecutor's proposed determinations when the matter involves a renotification hearing as a result of registrant's relocation. Over registrant's objection, the hearing below was limited to the implementation of community notification, i.e., the identity and location of the organizations to be notified. N.J.S.A. 2C:7-8c(2).
On July 1, 1997 H.M. pled guilty to attempted sexual assault as part of a plea agreement pursuant to which, on January 26, 1998, an indictment charging him with sexual assault was amended to attempted sexual assault to be treated as a third degree offense for purposes of sentencing, and he was sentenced to the time served in the Hudson County Jail since his arrest in September 1996 and placed on probation for an additional five years. The conviction arose from the alleged sexual assault of a 15 year old neurologically impaired male juvenile in H.M.'s Jersey City apartment on or about September 17, 1996. According to the victim he was approached on the street while walking home from school and was talked into going to the apartment where he was forced to submit to an assault despite his active resistance.
*510 Apparently, after being sentenced, H.M. moved to Union County where notification proceedings pursuant to Megan's Law were commenced in September 1998. On October 20, 1998, after a hearing at which H.M. was represented by counsel and documentation and testimony were considered by the court, Tier 2 classification, as amended by the court and the State, together with the proposed Tier 2 notification were affirmed. No appeal was taken from that order and notification was appropriately given.
H.M. moved into Essex County and as a result the Essex County Prosecutor sought a new order designating him a Tier 2 offender and a new order of notification appropriate to that risk and his new location.
When H.M.'s risk of re-offense was originally calculated, the Registrant Risk Assessment Scale (RRAS) prepared by the Union County Prosecutor yielded a total score of 51 points, placing him firmly in the 37-73 point moderate risk range. As a result of judicial review the score was reduced to 47 points, still well within the moderate risk range.
When judicial review of the proposed Essex notification came on for hearing on May 30, 2001, there had been significant changes in the facts with respect to what have been described as the dynamic factors reflected in the RRAS, see Matter of C.A., 146 N.J. 71, 103, 679 A.2d 1153 (1996). Unlike the immutable static factors, nature and seriousness of the offense, the dynamic categories relate to the characteristics of the offender and community support and are evidenced by current conditions as found at the time the registrant's risk to re-offend is assessed. Ibid.
During the intervening three years H.M.'s circumstances have changed. He contends that he has been steadily employed since March 1999; that he is now married and resides with his wife; and that he has been an offense-free decent member of society. Moreover, he is apparently now participating in sex offender specific therapy with the Department of Psychiatry at the Trinitas Hospital in Elizabeth. Consideration of H.M.'s present circumstances could well result in a reduction to Low Risk of Factor 11 (Therapeutic Support) and Factor 13 (Employment/Educational Stability) resulting in a reduction of the RRAS score to 43 points. Factor 7 (Length of Time Since Last Offense) would of necessity be reduced to Moderate Risk because over one year has passed since the September 17, 1996 offense, reducing the score another six points to 37.
It is important to keep in mind that the purpose of the Tier designation is to determine the risk that the registrant will re-offend, the risk that the registrant bears to the public. The appropriateness of the scope of a notification cannot be determined without an assessment of the current threat which the registrant poses to the public. Protection of the public is the focus of Megan's Law. These notification provisions are neither criminal nor punitive in nature but are civil remedies to permit public awareness of the presence of current threats to their safety, Doe v. Poritz, 142 N.J. 1, 43, 662 A.2d 367 (1995); "to protect the community from the dangers of recidivism by sexual offenders." Matter of C.A. supra at 80, 679 A.2d 1153.
The RRAS is the tool which has been created to help in that assessment. If reflective of current facts, it is presumptively accurate and will normally be accepted by the prosecutor and approved by the court. Id. at 109, 679 A.2d 1153. But it is merely a useful guide and when appropriate the court should fully consider other evidence bearing on the *511 registrant's danger to re-offend, including the views of experts or other relevant documentation.
In conclusion we hold that whenever an application is made for an order of notification, whether an initial order or a subsequent order resulting from a change of the location of the registrant's residence or employment, the court must consider the risk of recidivism in light of the then current situation and this means a reappraisal of the dynamic or variable, see Matter of Registrant G.B., 147 N.J. 62, 80, 685 A.2d 1252 (1996), factors in the RRAS and a consideration of any other relevant evidence, including when appropriate, the views of experts. This need for re-evaluation has been recognized in the Attorney General Guidelines which says that "the determination as to which tier is appropriate in any given case will be an ongoing process" and that "information which provides evidence of a change in circumstances or in the relevant factors may trigger a reevaluation." Attorney General Guidelines for Law Enforcement for the Implementation of Sex Offender Registration and Community Notification Laws (March 2000) at 49. On the other hand, the static or non-variable factors, once adjudicated, should not be revisited absent appellate direction.
The order of July 11, 2001 is vacated. The matter is remanded for further proceedings in accordance with this opinion.