894 A.2d 27

# IN THE MATTER OF REGISTRANT R.D.

Superior Court of New Jersey
Appellate Division

Telephonically Argued February 14, 2006—Decided March 17, 2006.

Before Judges ANTELL, LANDAU, and KING.[1]

*Dolores L. Stroup,* Assistant Deputy Public Defender, argued the cause for appellant (*Yvonne Smith Segars,* Public Defender, attorney).

*Meghan J. Hoerner,* Assistant Prosecutor, argued the cause for the State (*Robert L. Taylor,* Cape May County Prosecutor, attorney).

The opinion of the court was delivered by

---

[1] Judge King did not participate in oral argument. However, with the consent of counsel he has joined in this opinion. *R.* 2:13–2(b).

ANTELL, P.J.A.D. (retired and temporarily assigned on recall).

By order dated January 25, 2005, the Law Division granted the State's motion to increase registrant's Risk Assessment Score ("RAS") from 36 to 45 and to re-tier him from Tier I, low risk sex offender, to Tier II, moderate risk. Registrant now appeals from that order on the ground that it violates principles of *res judicata*. He argues that the increased scoring from 36 to 45 results from a change in the court's previous assessment of a static, not a dynamic, factor in his RAS which, under our prior rulings, should not have been "revisited."

Registrant is a 45 year old male. His Megan's Law offenses are for endangering the welfare of a child, *N.J.S.A.* 2C:24–4a, and criminal sexual contact, *N.J.S.A.* 2C:14–2c, (2 counts). These were committed in April 1997. He pled guilty in March 2000. On May 26, 2000 he was sentenced to serve 18 months on each of the sexual contact convictions and five years on the endangering convictions. He appears to have been released from confinement in July 2004.

The events supporting registrant's immediate underlying convictions involve his having led two fifteen year old girls to his apartment where he served them marijuana and alcohol and then masturbated in their presence.

Registrant's initial RAS was 38, for which he was classified Tier II by order of January 3, 2005. Following his residential relocation the terms of his community notification were modified under order dated February 7, 2005. On July 18, 2005 his RAS was lowered to 36 and he was reclassified Tier I after the Law Division determined from Dr. George Ackley's report that registrant's scores under Registrant Risk Assessment Scale (RRAS) criteria 11, 12 and 13 should be reduced to low risk. This order was entered with the prosecutor's consent.

In bringing this motion to re-tier, the State for the first time disclosed to the court that registrant had been incorrectly scored in the earlier proceedings under criterion # 6, duration of offen-

sive behavior. It was explained that a new assistant prosecutor had entered the case for the State and in her examination of the file certain leads were followed up which had previously been missed. This resulted in the discovery of a transcript from the Court of Common Pleas of Delaware County, Pennsylvania dated March 29, 1994 in which registrant was recorded as pleading guilty to three charges of open lewdness based upon separate incidents of sexual misbehavior with six young girls on a single day in 1986. The lengthy delay between the pleas and sentencing resulted from the necessity for a bench warrant, not successfully executed until 1994. R.D. was sentenced to 12 months for each offense. The sentences were run concurrently to each other as well as concurrently with a term R.D. was then serving in a federal prison.

As we stated in *I/M/O M.A.S.*, 344 *N.J.Super.* 596, 783 *A.2d* 244 (App.Div.2001), the concept of "duration" within the meaning of criterion # 6 is not limited to a single continuing criminal event but contemplates the period intervening between separate criminal events. Thus, since there was a lapse of more than two years between the offenses of 1986 and 1997 registrant should have been scored nine points, high risk under criterion # 6, and not zero points, low risk, producing an overall score of 45 points, moderate risk, and not 36 points, low risk.

Registrant argues that the principle favoring finality of judgments should have governed the outcome of this proceeding. He cites our published opinion in *I/M/O H.M.*, 343 *N.J.Super.* 219, 778 *A.2d* 508 (App.Div.2001), in which we stated that under principles of *res judicata* the static factors listed under criteria one through eight, once adjudicated, should not be reviewed.

While the distinction between static and dynamic factors is a convenient device for grouping the analytical factors affecting risk of re-offense, it is not intended that they should be so inflexible of application in these regulatory proceedings. We intimated as much when we said in our closing *dicta* in *I/M/O H.M.* that the

static factors, once adjudicated, "should not be revisited *absent appellate direction*" (emphasis ours), *Id.* at 224, 778 *A.*2d 508.

Registrant also relies on our unpublished opinion in *I/M/O K.N.*, Docket No. A–3007–01T1 dated March 12, 2002. In that classification proceeding based on registrant's relocation from Hudson to Monmouth County the Monmouth County prosecutor chose to include in registrant's RAS points for a previous charge which the Hudson County prosecutor had not included. While we there held that the Monmouth County prosecutor was bound by *res judicata* to the Hudson County determination, we carefully pointed out that Hudson County's failure to include points for an earlier charge "was not shown to be the result of oversight or error." The information was contained in the discovery packet and "was known to the judge and prosecutor." We did "not dismiss the likelihood that it was excluded from the Assessment Score for valid reasons." This is in contrast to the case before us. Although the information as to registrant's 1986 conviction might, by greater diligence, have been discovered earlier, it was not, and because of this oversight it was not properly weighed, as it should have been by the court and prosecutor.

The importance of this information concerning an earlier offense nearly identical to the one before us can not be overstated.

Most studies show that the static factors used in the Scale are the best predictors of risk of re-offense. *Ibid.* Risk assessment experts generally agree the best predictor of a registrant's future criminal sexual behavior is his or her prior criminal record. We emphasize that the focus on prior offenses is not due to any attempt at punishment but is rather a scientific attempt to better protect the public safety from registrants likely to re-offend.

[*Matter of C.A.*, 146 *N.J.* 71, 105, 679 *A.*2d 1153 (1996).]

The purpose of the Registration and Community notification Law is to guard the public safety and welfare by affording it an opportunity to protect itself from the threat of recidivism by sexual predators. That Legislative goal was extensively discussed in *John Doe v. Poritz*, 142 *N.J.* 1, 14–18, 662 *A.*2d 367 (1995), and requires no further elaboration here. The evidence brought for-

ward by the prosecutor's motion, and evaluated for the first time by the trial judge, is vital to the achievement of that goal.

■ Our Rules of Court have long recognized that there are instances where justice may require relief from, or modification of, a prior adjudication. *R.* 4:50–1 governs those instances. Motions thereunder are ordinarily to be made to the judge who entered the initial judgment, *Quagliato v. Bodner,* 115 *N.J.Super.* 133, 278 *A.*2d 500 (App.Div.1971). Relief from terms of a prior judgment, although granted sparingly, is addressed to the sound discretion of the trial court, and that discretion will be left undisturbed unless clearly abused. *Housing Authority of the Town of Morristown v. Little,* 135 *N.J.* 274, 283, 639 *A.*2d 286 (1994).

*R.* 4:50–1(a) provides an opportunity for relief where mistake or inadvertence is evident. Under sub-paragraph (f) any other reason justifying relief may be considered. Here, the motion brought by the prosecutor falls within the time periods allowed under both sub-paragraph (a) and sub-paragraph (f). The trial judge has indicated that whether by reason of a counsel's mistake or an inadvertent omission, he was not aware of the extent, time and nature of the 1986 offenses. He was concerned, too, with the grave public policy concerns described by the legislature in *N.J.S.A.* 2C:7–1 and discussed more extensively in *Doe v. Poritz, supra.*

■ The Supreme Court has made clear that a court has the authority under sub-section (f) to reopen a judgment where such relief is necessary to achieve a fair and just result mandated by public policy. *Manning Engineering Inc. v. Hudson County Park Comm.,* 74 *N.J.* 113, 122, 376 *A.*2d 1194 (1977), and cases there cited. Where, as here, a significant public policy is deemed threatened by the trial judge, we do not believe that revisiting his judgment under sub-paragraphs (a) and (f) constitutes an abuse of discretion. See, e.g., *Manning, supra,* 74 *N.J.* at 125, 376 *A.*2d 1194.

The principle of finality of judgments is one of repose. It dictates that litigation must eventually be ended and that at some point the prevailing party be allowed to

rely confidently on the inviolability of his judgment. But it is not an absolute rule, and must be weighed in the balance with the equally salutary principle that justice should be done in every case.

*[Hodgson v. Applegate, 31 N.J. 29, 43, 155 A.2d 97 (1959).]*

The order presented for review is affirmed.