930 A.2d 438

IN THE MATTER OF R.A.

Superior Court of New Jersey
Appellate Division

Telephonically Argued April 17, 2007—Decision
and Order filed April 30, 2007.

Before Judges LANDAU and NEWMAN.

*Christopher J. Duffy*, Assistant Deputy Public Defender, argued the cause for appellant (*Yvonne Smith Segars*, Public Defender, attorney).

*Allan C. Young*, Assistant Prosecutor, argued the cause for the State (*Theodore J. Romankow*, Union County Prosecutor, attorney).

The opinion of the Court was delivered by

LANDAU, J.A.D. (retired and temporarily assigned on recall).

Appellant R.A. is a Megan's Law registrant. He appeals from a Law Division order of March 6, 2007, entered in Union County that modified in part a prior Law Division order of classification and manner of notification entered in Middlesex County on November 17, 2004. The Middlesex County order classified the registrant as a moderate risk for re-offense based upon a Registrant Risk Assessment Scale (RRAS) score of 44, but accepted the Prosecutor's determination that the scope and manner of notification be as for a Tier I registrant, limited to law enforcement notice only.[1]

In July 2006, R.A. moved to Elizabeth, New Jersey, occasioning the requisite statutory notification of law enforcement authorities in Union County. Upon review of R.A.'s file, the Union County Prosecutor (Prosecutor) notified him of an intention to increase the registrant's RRAS scores under criteria No. 4 (Victim Selec-

---

[1] The moderate range includes RRAS scores between 37 and 73, ordinarily warranting Tier II community and internet notice.

tion) and No. 9 (Response to Treatment) from those previously set by the Middlesex County Prosecutor and determined by the Judge in Middlesex County. Further, the Prosecutor proposed to increase the Tier I level of notice previously set in Middlesex to a Tier II notice.

R.A. challenged these determinations in the proceeding below. The Prosecutor offered two reasons for modification. First, that, based upon reports from the group psychotherapist with whom R.A. has been regularly meeting, the registrant sometimes fantasizes about relationships with young girls and had also admitted experiencing similar fantasies prior to his conviction. Second, that an error was made by the Middlesex County Prosecutor in scoring R.A.'s relationship with the victim as one comparable to a family or household member, as distinct from a mere "acquaintance."

The Megan's Law Judge rejected the argument that "changed circumstances" altering the earlier Middlesex County assessments of dynamic factors were demonstrated by the registrant's admissions in therapy that he occasionally experienced a child-sexual fantasy. Recognizing that this concerned the "response to treatment" criterion, the Judge noted and adopted the expert opinion submitted by psychologist Lorri Lessin, Ph.D., that the ability to recognize and acknowledge feelings that led to a prior sexual offense is a measure of progress in treatment which can significantly reduce relapse. This view was bolstered by the recommendation of R.A.'s group social worker that the Middlesex County Tier I notification tiering should remain in place.

The Judge did, however, accept the Prosecutor's argument that a mistake was made by the Middlesex County Prosecutor respecting RRAS criterion No. 4. The Prosecutor urged that as R.A. was only a godfather and did not physically reside in the same premises, he should be regarded as merely an acquaintance, thus increasing the "offense history" score from 0 to 3. In this respect, the Judge concluded that the facts upon which the prior determination was made respecting the static factor of victim selection were "clearly erroneous" and that the court had a

consequent obligation not to "rubber stamp" a prior decision based upon a mistake of fact.

The court further concluded that the difference in the victim selection aspect of the RRAS alone was sufficient to meet the requirements of *R.* 4:50–1(f) because of public policy reasons, and thus altered the prior Tier I notification order 3 years after that static factor was assessed in Middlesex.

Based upon that assessment, the notification requirement imposed for R.A. was increased to the presumptive Tier II notification for registrants with a moderate risk RRAS score.

■ *In the Matter of R.D.*, 384 *N.J.Super.* 61, 894 *A.2d* 27 (App.Div.2006), we recognized that a court does have the authority under *R.* 4:50–1(f) to reopen a judgment where such relief is necessary to achieve a fair and just result mandated by public policy. *Id.* at 66, 894 *A.2d* 27 (citing *Manning Eng'g Inc. v. Hudson County Park Comm'n*, 74 *N.J.* 113, 122, 376 *A.2d* 1194 (1977)). In that case, however, we also recognized that such a motion must ordinarily be made to the judge who entered the initial judgment, *R.D., supra,* 384 *N.J.Super.* at 66, 894 *A.2d* 27. More importantly, we recognized that there are extreme limitations upon modification of the assessment of a static factor,[2] and distinguished a situation where information affecting a static factor was not known to the judge and the prosecutor, as in *R.D.*, from a case in which such information was known.

Here, we believe that the Union County Prosecutor and Megan's Law Judge have misread the rationale of *R.D.* There is a difference between the discovery of facts not previously known, and reassessment by a second judge of the same facts considered by an earlier judge. In short, there is a difference between a mistake of fact and a debate over the significance of unchanged facts.

---

[2] Static or non-variable factors, once adjudicated, should not be revisited absent appellate direction. *In re H.M.*, 343 *N.J.Super.* 219, 224, 778 *A.2d* 508 (App.Div.2001).

On this ground alone, *res judicata* bars the reassessment made of the static criterion of "victim selection", and thus removes the basis relied upon for modifying R.A.'s previous Tier I notification level.

There was no mistake of fact. R.A. was not originally deemed to fall within the "household/family member" category merely because he was godfather to the victim and her sister. The victim's mother, who initiated the complaint to law enforcement, herself stated that R.A. was "like a father" to her children. The children referred to R.A. as "Pop–Pop" and "Pop". He was not merely "an acquaintance", but was regularly trusted by their mother to stay at home with them at night while she was at work, even if he did not live there. All of this information was known to both the Middlesex County Prosecutor and Judge who made both the original RRAS criterion selection and the Tier I notification determination. In these circumstances, overruling those prior determinations was a mistaken exercise of judgment.

Guideline XI of the Attorney General Guidelines (Scope of Community Notification) [3] provides that notification may be "properly tailored" in the sound discretion of the prosecutor on a case-by-case basis considering all facts and circumstances of individual cases. The following examples are given in that section of the guidelines:

1. If the offender's past victims are all members of the immediate family or same household, then it may be determined that the offender is not a risk to community organizations or schools which would otherwise receive community notification concerning a Tier Two offender. Members of the immediate family will include, for purposes of this determination, the offender's children, including adopted, step and foster children. Members of the immediate family will also include nieces and nephews, and brothers and sisters, to whom the offender has regular access. *Members of the same household will include the children of any person living in the household* in which the offender lives or *where the offender has either full or part-time care or legal responsibilities. Members of the same household does not require a family relationship.* The definition may include multi-unit housing and families living in adjacent or adjoining housing. *The focus should be on the class of*

---

[3] Attorney General Guidelines for Law Enforcement for the Implementation of Sex Offender Registration and Community Notification Laws, January 2005

*victims and the access to those victims, as well as the relationship of trust between victim and offender.* (emphasis provided.)

We do not take lightly the public policy concerns expressed by the Judge and the Prosecutor in the instant appeal, nor do we fail to recognize that R.A. remains within the numerical range designated as Tier II moderate risk. Nonetheless, given the court's rejection of the State's argument that R.A.'s candor respecting sexual fantasies constituted a change in circumstances, and the incorrect application of *In re R.D.* to the unchanged facts in this case, we can discern no clear and convincing factual basis to alter the previous Tier I notification designation. *See, E.B. v. Verniero,* 119 *F.*3d 1077, 1111 (3d Cir.1997) reh'g denied, 127 *F.*3d 298 (3d Cir.1997). Our conclusion is fortified by the unrebutted opinion of R.A.'s therapist that retention of the Tier I notification status "should remain in place," and by the fact that more than five years have elapsed since his release from custody, and that he has continued in therapy without incident.

We conclude, therefore, that the determination under review must be reversed, to the extent that it rescores RRAS criterion No. 4, and to the extent that it directs Tier II notification instead of the Tier I notification set forth in the Middlesex County Judgment.

The Attorney General Guidelines provide:

XV. Ongoing Obligation to Tier and Notify.

Prosecutors and local law enforcement agencies should be cognizant that the determination as to which Tier is appropriate in any given case will be an on-going process. Change of address or information which provides evidence of a change in circumstances or in the relevant factors may trigger a re-evaluation.

Given this obligation, we have no doubt that the Union County Prosecutor will continue to remain alert to any changes in R.A.'s dynamic circumstances warranting re-evaluation. In that regard, we note that during oral argument his counsel expressed registrant's willingness to have a quarterly report submitted to the Prosecutor by R.A.'s therapist.

Based upon the foregoing determination, the RRAS criterion No. 4 score for R.A. shall be restored to "0", and his Tier I

notification status shall be continued barring change in circum-stances.