# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3342-23

IN THE MATTER OF
REGISTRANT G.L.[1]

_____

Argued February 25, 2025 – Decided March 6, 2025

Before Judges Sumners and Perez Friscia.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. ML-23-07-0037.

Stephanie Lutz, Deputy Public Defender, argued the cause for appellant G.L. (Jennifer N. Sellitti, Public Defender, attorney; Stephanie Lutz, of counsel and on the briefs).

Shep A. Gerszberg, Assistant Prosecutor, argued the cause for respondent State of New Jersey (Theodore N. Stephens, II, Essex County Prosecutor, attorney; Shep A. Gerszberg, of counsel and on the brief).

PER CURIAM

---

[1] We use initials to preserve the confidentiality of these proceedings. R. 1:38-3(c)(9).

Appellant G.L. appeals from the June 5, 2024 Law Division order denying his request to obtain a psychological evaluation and June 19, 2024 order classifying him as a Tier II sex offender pursuant to the registration and community notification provisions of Megan's Law, N.J.S.A. 2C:7-1 to -23. Having reviewed the record, parties' arguments, and applicable legal principles, we affirm.

I.

In November 2007, appellant lured his ex-girlfriend, R.A., to his residence in New York under the guise of having the money he owed for their daughter's child support. After drinking alcohol with R.A., appellant punched and choked her and forcibly penetrated her vaginally and anally. At the time appellant committed the rape, he was twenty-seven years old and had two prior criminal convictions.

In March 2010, appellant pleaded guilty in Kings County, New York to third-degree sexual assault and first-degree criminal contempt for violating a protection order at the time of the offense. In April, the sentencing court imposed a term of imprisonment of two years and six months with a five-year period of parole supervision for the rape conviction and an indeterminate term of imprisonment of one year and six months to three years for the contempt conviction. The New York State Department of Corrections and Community

Supervision certified that appellant was incarcerated between May 11, 2010, and August 17, 2010. He was thereafter reincarcerated on these charges from November 4, 2013, until his parole on October 7, 2014. Appellant was classified in New York as a level one sex offender with the lowest reporting requirements.

Appellant later moved to New Jersey, and the State served him on May 2, 2024 with a notice of intention to classify him as a Tier II moderate-risk offender under Megan's Law with required notifications. The court thereafter scheduled appellant for a tier hearing, which was adjourned to June 5. The day before the hearing, appellant moved for leave to obtain a psychological evaluation and advised the court he was seeking a Tier I classification under the "heartland" exception pursuant to In re Registrant G.B., 147 N.J. 62 (1996).

On June 5, the court held a Megan's Law hearing. Appellant did not challenge his Registrant Risk Assessment Scale (RRAS) score of fifty or the determination that he was a moderate level of risk for re-offense but argued an expert was warranted to opine that his "situation . . . [wa]s not adequately or accurately captured by the RRAS." Specifically, appellant argued his "case [wa]s unique and f[ell] outside of the heartland" of Megan's Law tiering cases and that "the extent of notification called for by [appellant's] tier classification would be excessive."

A-3342-23

The State opposed appellant's application as untimely filed. The State further argued that all sex offender registrants want to be tiered as "Tier [I], but the tiering is a legal determination, it[ is] not a psychological or a psychosocial determination, and the experts rely on self-reporting, and they do[ not] always look at what the relevant and reliable evidence [is], they look at their own scoring." The State represented that appellant "dodged his obligation to register in New Jersey for a protracted amount of time" and argued his conviction for failing to register demonstrated he delayed the tiering process. Appellant did not dispute that he had "plead[ed] guilty to . . . fail[ing] to register" under Megan's Law after he had resided in New Jersey for some time.

At argument, the court requested that appellant's counsel respond to the State's objection and whether "delay [wa]s really the issue." Appellant's counsel responded that appellant was relying on G.B., because the Supreme Court has found that "people that offend against household members generally pose a lower risk," and appellant committed "a one-time offense against a former romantic partner." Appellant's counsel requested to "support that argument with a psychological evaluation," noting appellant had "over a decade with no notification and no re-offending." The State agreed that appellant had not been convicted of another sexual offense but refuted that appellant had not re-offended because he was: found guilty of a local ordinance violation in 2019;

A-3342-23

found guilty of obstruction of justice in 2020; and pleaded guilty to failing to register under Megan's Law in May 2021.

The court issued an order and accompanying oral decision denying appellant's request for a psychological evaluation, and it later issued an order tiering appellant under Megan's Law. The court found "there [was] nothing . . . proffered . . . that indicate[d] this case [wa]s so unique that it [was] what G.B. contemplate[d]." The court found appellant offered no support "that indicate[d] . . . that this [wa]s a situation where the RRAS d[id] not adequately account for what . . . [was being] talk[ed] about here." The court concluded he failed to establish a "heartland exception," and his case was not "unique" as contemplated under G.B. After denying appellant's request to obtain an expert, the court tiered appellant as a Tier II offender, based on a total RRAS score of fifty,[2] and it ordered community notification, including internet publication. The court noted appellant had no "specific objections with the RRAS" scoring and indicated it was "satisfied by clear and convincing evidence that the scores

---

[2] Regarding notification required for Tier II offenders, N.J.S.A. 2C:7-8(c)(2) provides that "[i]f risk of re-offense is moderate, organizations in the community including schools, religious and youth organizations shall be notified in accordance with the Attorney General's guidelines" as well as law enforcement agencies.

5

in each of the categories [were] appropriately supported by citations to various portions of that record of documentation."

On appeal, appellant raises the following contentions:

POINT I

I.    ACCORDING TO [G.B., 147 N.J. at 62] THE COURT SHOULD REVERSE AND REMAND THIS MATTER TO THE LAW DIVISION SO THE COURT BELOW CAN CONSIDER [APPELLANT'S] PSYCHOLOGICAL RISK EVALUATION REPORT PRIOR TO DETERMINING HIS MEGAN'S LAW TIER CLASSIFICATION AND SCOPE OF NOTIFICATION.[3]

A.    The process through which the court determined that an expert report was unwarranted was insufficient for the adjudication of a dispositive issue with significant consequences.

B.    According to G.B., [appellant] presented sufficient justification for a short adjournment to obtain an expert evaluation.

II.

"[W]e ordinarily review a trial [court]'s 'conclusions regarding a Megan's Law registrant's tier designation and scope of community notification for an abuse of discretion.'" In re Registrant R.S., 258 N.J. 58, 81 (2024) (quoting In re Registrant B.B., 472 N.J. Super. 612, 619 (App. Div. 2022)). "[A]n abuse of

---

[3]    We have renumbered the point headings to comport with our style conventions.

discretion arises when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." In re Registrant M.L., 479 N.J. Super. 433, 449 (App. Div. 2024) (alteration in original) (quoting State v. R.Y., 242 N.J. 48, 65 (2020)). However, "[a] trial court's interpretation of the law and the . . . consequences that flow from established facts are not entitled to any special deference." Ibid. (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

"Megan's Law is intended 'to protect the community from the dangers of recidivism by sexual offenders.'" B.B., 472 N.J. Super. at 618 (quoting In re Registrant C.A., 146 N.J. 71, 80 (1996) (citing N.J.S.A. 2C:7-1(a))). "[I]t requires certain sex offenders to register with law enforcement agencies, N.J.S.A. 2C:7-2 to -4, which are then authorized 'to release relevant and necessary information regarding sex offenders to the public when the release of the information is necessary for public protection,' in accordance with the AG Guidelines." M.L., 479 N.J. Super. at 442 (quoting In re Registrant N.B., 222 N.J. 87, 95 (2015)); see also N.J.S.A. 2C:7-5(a). "The law is remedial and not intended to be punitive." In re Registrant C.J., 474 N.J. Super. 97, 105 (App. Div. 2022) (quoting In re Registrant A.A., 461 N.J. Super. 385, 394 (App. Div. 2019)). "[T]he expressed purposes of the registration and notification

procedures [under Megan's Law] are 'public safety' and 'preventing and promptly resolving incidents involving sexual abuse and missing persons.'" Ibid. (second alteration in original) (quoting A.A., 461 N.J. Super. at 394 (quoting N.J.S.A. 2C:7-1)). Offenders from other states who relocate to New Jersey are subject to the registration requirements. N.J.S.A. 2C:7-2(c)(3).

The RRAS was created in response to the Legislature's directive in Megan's Law for the Attorney General to "promulgate guidelines and procedures for the notification" of a sex offender's whereabouts, depending on the offender's degree of risk of re-offense. In re Registrant J.G., 463 N.J. Super. 263, 273-74 (App. Div. 2020) (quoting N.J.S.A. 2C:7-8). "The scope of community notification is primarily determined by a registrant's designation as a Tier I, II or III offender." M.L., 479 N.J. Super. at 442 (citing N.J.S.A. 2C:7-8(a), (c)(1) to (3)). The Megan's Law "[t]ier designations reflect a registrant's risk of re-offense, as determined by a judge assessing various information, including thirteen factors referenced in the RRAS." C.J., 474 N.J. Super. at 106. Pursuant to N.J.S.A. 2C:7-2(a), the RRAS was developed for the State's use "to establish its prima facie case concerning a registrant's tier classification and manner of notification." In re Registrant T.T., 188 N.J. 321, 328 (2006) (italicization omitted) (quoting C.A., 146 N.J. at 110). "[T]he [RRAS] is presumptively accurate and is to be afforded substantial weight—indeed it will even have

binding effect—unless and until a registrant 'presents subjective criteria that would support a court not relying on the tier classification recommended by the [RRAS].'" C.J., 474 N.J. Super. at 107 (first and second alterations in original) (quoting G.B., 147 N.J. at 81). "Although a tier classification made on the basis of the [RRAS] should be afforded deference, a court should not rely solely on a registrant's point total when it conducts a judicial review of a prosecutor's tier level classification or manner of notification decisions." C.A., 146 N.J. at 108. "Judicial determinations regarding tier classification and community notification are made 'on a case-by-case basis within the discretion of the court[]' and 'based on all of the evidence available[,]' not simply by following the 'numerical calculation provided by the [RRAS].'" C.J., 474 N.J. Super. at 120 (alterations in original) (quoting G.B., 147 N.J. at 78-79).

"In challenging a tier determination, a registrant may argue that (1) the RRAS score was erroneously calculated, (2) the case falls outside the 'heartland' of Megan's Law cases, or (3) the extent of community notification required is excessive due to 'unique' aspects of the registrant's case." J.G., 463 N.J. Super. at 275 (citing T.T., 188 N.J. at 330).

The RRAS contains four categories of review: seriousness of the offense; offense history; personal characteristics; and community support. See id. at 274 (citing C.A., 146 N.J. at 82). "The first two categories, '[s]eriousness of

A-3342-23

[o]ffense' and '[o]ffense [h]istory,' are considered static categories because they relate to the registrant's prior criminal conduct." C.A., 146 N.J. at 103. The next two categories, "'[c]haracteristics of [o]ffender' and '[c]ommunity [s]upport' are considered to be dynamic categories, because they are evidenced by current conditions." Ibid. The "static factors" relate to past criminal conduct and weigh more heavily under the RRAS than the dynamic factors. In re Registrant J.M., 167 N.J. 490, 500-01 (2001).

"Each factor is assigned a risk level of low (0), moderate (1), or high (3), and '[t]he total for all levels within a category provides a score that is then weighted based on the particular category.'"[4] A.A., 461 N.J. Super. at 402 (alteration in original) (emphasis omitted) (quoting C.A., 146 N.J. at 104). "An RRAS score . . . [totaling] 0 to 36 is low risk; 37 to 73 moderate risk; and 74 or more, high risk." T.T., 188 N.J. at 329. "The State ultimately bears the burden of proving—by clear and convincing evidence—a registrant's risk to the community and the scope of notification necessary to protect the community." C.J., 474 N.J. Super. at 108.

---

[4] "The point total of the '[s]eriousness of [c]rime' category, which is designed to predict the nature of any re-offense . . . is multiplied by five." C.A., 146 N.J. at 104. On the other hand, the categories of "'[o]ffense [h]istory,' '[c]haracteristics of [o]ffender[,]' and 'community support' . . . are multiplied by three, two, and one respectively." Ibid.

Appellant argues the court erred in denying his request for a psychological risk evaluation before it determined his Megan's Law tier classification and notification requirements. He specifically contends the court erroneously denied a psychological evaluation without considering that: after his release from incarceration, he lived in New York without notification requirements for approximately twelve years; he committed the sexual offense nearly seventeen years ago; and he did not re-offend. Appellant does not dispute "whether he should ultimately be subject to public notification" or his RRAS score, but he maintains the court's Tier II classification and scope of notification determinations warrant reversal and a remand for him to obtain a psychological expert report.

"Only in the unusual case where relevant, material, and reliable facts exist for which the [RRAS] does not account, or does not adequately account, should the [RRAS] be questioned." G.B., 147 N.J. at 82. After the State has met its burden of demonstrating prima facie evidence of a registrant's RRAS tier level and notification, "the registrant then has the burden of producing evidence challenging the prosecutor's determinations on both issues." C.J., 474 N.J. Super. at 108 (quoting C.A., 146 N.J. at 84). A court shall review each offender's tiering classification on a case-by-case basis and may adjust the

recommended RRAS tier classification when a "registrant presents subjective criteria that would support a court not relying on the tier classification." M.L., 479 N.J. Super. at 443 (quoting C.A., 146 N.J. at 109). The court is not limited to only consider the RRAS factors, but it may also address "any other relevant evidence, including when appropriate, the views of experts." In re Registrant H.M., 343 N.J. Super. 219, 224 (App. Div. 2001). "[A] registrant shall be permitted to introduce expert evidence about [their] tier classification . . . if such evidence would, in the trial court's discretion, assist in the disposition of the case." G.B., 147 N.J. at 87. The court shall hold an evidentiary hearing when a registrant demonstrates a genuine issue of material fact regarding the registrant's subjective tiering criteria. Cf R.S., 258 N.J. at 77-78 (finding a registrant is entitled to an evidentiary hearing regarding publication on the sex offender internet registry, N.J.S.A. 2C:7-13(b)(2), "if the registrant demonstrates [that] there exists a genuine issue of material fact about whether the registrant's conduct can be characterized by a pattern of repetitive and compulsive behavior"). Indeed, if the "trial court is concerned that the proposed tier classification may be inappropriate, the court can, if necessary, secure its own subjective evaluations . . . [and] appoint its own experts." C.A., 146 N.J. at 109.

We reject appellant's contention that the court erred in denying his motion for an "opportunity to be evaluated by a psychologist" and proceeding to find he

A-3342-23

was a Tier II offender. While we recognize the RRAS does not consider "positive post-sentence behavior as [a] true mitigating factor[] that can reduce the projected risk of re[-]offense[,]" and "expert testimony may be essential for an accurate tier designation," a registrant has the burden of presenting a material issue regarding subjective criteria warranting an evaluation. G.B., 147 N.J. at 83. Stated another way, a registrant must make a sufficient prima facie showing to the trial court of relevant evidence demonstrating that a further evaluation, including the introduction of an expert's opinion, is warranted because the RRAS does not accurately capture aspects of his or her character or current conditions. See id. at 87-88. Appellant has failed to make the minimum necessary showing here.

In the present matter, appellant argues he demonstrated the need for an evaluation based on the years he lived in New York with no notification requirements. The court found appellant failed to proffer sufficient facts warranting "leave to obtain a psychological evaluation to support a 'heartland' motion." We concur with the court's determination that appellant's lack of notification requirements in New York are insufficient evidence to warrant a psychological evaluation and to challenge the Tier II classification under G.B. Appellant failed to show the RRAS "did not accurately weigh certain factors as related to him or that the [RRAS] did not take into account certain peculiar

13

factors of the registrant's offense or history that might be relevant in determining his risk of re[-]offense." G.B., 147 N.J. at 82. Therefore, we discern no abuse of discretion in the court's denial of appellant's psychological evaluation request.

We further conclude appellant's contention that the court was "overriding[ly] concern[ed] with delay" is unsupported. The record illustrates the court requested appellant's counsel to "respond" to the prosecutor's arguments regarding appellant's delay in complying with Megan's Law. We note appellant filed his motion with the court one day before the hearing. The State served appellant on May 2, 2024 with its notice of a Megan's Law tier hearing scheduled for May 7 and its intention to seek a Tier II classification. The court adjourned the hearing to June 5, providing appellant further time, but he did not obtain an expert evaluation. The State argued he "dodged" registering when he moved to New Jersey and avoided the State's service of his hearing date. The court noted it had sentenced appellant to probation after he was charged with, and pleaded guilty to, failing to register under Megan's Law. The record demonstrates the court's inquiry of appellant's counsel as to whether "delay [was] really the issue" was in response to the State's arguments. The court's denial of appellant's motion was not based on a finding of delay.

Appellant further emphasizes that since he committed the rape in 2007 and was released from incarceration, he has not re-offended. As the court noted,

14

this is not "a situation where the RRAS does not adequately account for" appellant's time in the community without re-offending. The RRAS accounts for appellant's offense history under criteria five, and appellant scored a zero, making him a low risk for re-offending, because his New York conviction for raping his ex-girlfriend was the "only reported sex offense." Additionally, the RRAS considered appellant's offense history while in the community after his release from incarceration. Under RRAS's criteria seven, "length of time since [his] last sexual offense," the court found appellant to be a low risk with a score of a zero. A review of the record demonstrates the court did not abuse its discretion in finding that appellant failed to demonstrate a sufficient showing that he was outside of the heartland of cases of Tier II offenders or that his notification requirements were excessive due to unique circumstances of his case.

Finally, appellant argues for the first time on appeal that the court should have heard his motion pursuant to Rule 1:6-2 as unopposed because the State failed to timely file an opposition. R. 1:6-2(a) ("The motion shall be deemed uncontested and there shall be no right to argue orally in opposition unless responsive papers are timely filed and served stating with particularity the basis of the opposition to the relief sought."). At oral argument, appellant did not object to the State's opposition to his motion. It is well-recognized that appellate

courts generally "decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest." Zaman v. Felton, 219 N.J. 199, 226-27 (2014) (quoting State v. Robinson, 200 N.J. 1, 20 (2009)).

For the sake of completeness, we add only the following comment. The court appropriately permitted the State to oppose appellant's motion, which appellant's counsel had filed on June 4, 2024, the day before the Megan's Law hearing. Appellant did not dispute having ample notice that the State was seeking a tier classification under Megan's Law and that the State served him over one month before his June 2024 hearing. The court did not err in permitting the State to oppose appellant's motion because he had filed the motion with one days' notice, did not object to the State's oral argument in opposition, and did not request an adjournment.

To the extent we have not addressed them, any remaining contentions raised by appellant lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

16