# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4020-23

IN THE MATTER OF A.M.

_____

Submitted May 29, 2025 – Decided June 6, 2025

Before Judges Walcott-Henderson and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. ML-97-07-0017.

Jennifer N. Sellitti, Public Defender, attorney for appellant A.M. (Michael R. Noveck, Deputy Public Defender, of counsel and on the brief).

Theodore N. Stephens, II, Essex County Prosecutor, attorney for respondent State of New Jersey (Shep A. Gerszberg, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Registrant A.M.[1] appeals from a June 28, 2024 order designating him a Tier III sex offender pursuant to the registration and community notification

---

[1] We use initials to preserve the confidentiality of records related to child victims of sexual assault or abuse. R. 1:38-3(c)(9).

provisions of Megan's Law, N.J.S.A. 2C:7-1 to - 23. He argues the court improperly scored him as "high risk" on category nine of the Registrant Risk Assessment Scale (RRAS)–registrant's response to treatment–notwithstanding the State's failure to offer evidence sufficient to support that finding. A.M. also contends the order was not properly entered in accordance with Rule 4:42-1.

The State agrees it did not meet its obligation to "introduce evidence to support finding that . . . [A.M.] is 'high[]risk' on RRAS factor [number nine]." Specifically, the RRAS Manual promulgated with the Attorney General's Guidelines for Law Enforcement for the Implementation of Sex Offender Registration and Community Notification Laws states, "[a] therapist's report is necessary to rate this criterion."[2] The State concedes it did not provide the required report, and the matter must be remanded for a new Megan's Law classification hearing. We reverse and remand for a new hearing.

A.M. has been subject to Megan's Law registration since 1997. He was previously designated as a Tier III sex offender. On April 25, 2024, the State filed a motion for re-notification because A.M. changed his address. On June 12, 2024, the court conducted a classification hearing. Relevant to this appeal,

---

[2] Attorney General Guidelines for Law Enforcement for the Implementation of Sex Offender Registration and Community Notification 7 (rev. 2007) (Guidelines).

the State scored A.M. as "high risk" on RRAS category nine, response to treatment. The State did not provide a therapist's report to support that score.

A.M. objected because "there is no therapist['s] report . . . to score category [nine]," and "[w]ithout a therapist[']s report indicating that [A.M.] did[ not] successfully complete or did successfully complete treatment, no score may be applied to [that] category." The State responded that because high risk was "the score that has been in [A.M.'s] . . . prior [RRAS,] . . . [t]he State was following along with the prior" score. The State conceded it had "no information regarding sex offender specific treatment."

The court nevertheless scored A.M. high risk on category nine. It was "not inclined to deviate from" the prior determination of high risk because "[a]t some point along the line here, there was a report." The court was "satisfied by clear and convincing evidence that the [R]RAS scores as constituted and proposed by the State [were] appropriate." On June 24, it entered an order granting the State's motion for the reasons set forth in its June 12 oral opinion.

"We review a trial court's conclusions regarding a Megan's Law registrant's tier designation and scope of community notification for an abuse of discretion." In re Registrant B.B., 472 N.J. Super. 612, 619 (App. Div. 2022). "[A]n abuse of discretion 'arises when a decision is made without a rational

A-4020-23

explanation, inexplicably departed from established policies, or rested on an impermissible basis."  Id. at 619-20 (alteration in original) (quoting State v. R.Y., 242 N.J. 48, 65 (2020)).  However, "[a] trial court's interpretation of the law and the . . . consequences that flow from established facts are not entitled to any special deference."  Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

"In challenging a tier determination, a registrant may argue that (1) the RRAS score was erroneously calculated, (2) the case falls outside the 'heartland' of Megan's Law cases, or (3) the extent of community notification required is excessive due to 'unique' aspects of the registrant's case."  In re Registrant J.G., 463 N.J. Super. 263, 275 (App. Div. 2020) (quoting In re T.T., 188 N.J. 321, 330 (2006)).

The Megan's Law "[t]ier designations reflect a registrant's risk of re-offense, as determined by a judge assessing various information, including thirteen factors referenced in the RRAS."  In re Registrant C.J., 474 N.J. Super. 97, 106 (App. Div. 2022) (citing In re Registrant A.A., 461 N.J. Super. 395, 402 (App. Div. 2019)).  The RRAS was developed for the State's use "to establish its prima facie case concerning a registrant's tier classification and manner of

notification." T.T., 188 N.J. at 328 (quoting In re Registrant C.A., 146 N.J. 71, 110 (1996)).

"Although it is not scientific evidence, the [RRAS] is a 'reliable and useful tool that the State can use to establish its prima facie case concerning a registrant's tier classification and manner of notification.'" In re Registrant M.L., 479 N.J. Super. 433, 443 (App. Div. 2024) (quoting C.A., 146 N.J. at 110). "While a tier classification made on the basis of the [RRAS] should be afforded deference, it is not absolute; a Megan's Law judge must conduct an independent review of the merits of the case and not rely sole on the [RRAS] score." Ibid. (citing C.A., 146 N.J. at 108-09). The State ultimately bears the burden of proving "by clear and convincing evidence both the registrant's level of risk to the community and the scope of notification necessary to protect the community." Ibid. (citing In re Registrant R.F., 317 N.J. Super. 379, 383-84 (App. Div. 1998)).

The RRAS contains four categories of review: seriousness of the offense; offense history; personal characteristics; and community support. State v. C.W., 449 N.J. Super. 231, 260 (App. Div. 2017) (citing In re Registrant V.L., 441 N.J. Super. 425, 429 (App. Div. 2015)). "The first two categories, '[s]eriousness of [o]ffense' and '[o]ffense [h]istory,' are considered static categories because they

relate to the registrant's prior criminal conduct." C.A., 146 N.J. at 103. The next two categories, "[c]haracteristics of '[o]ffender' and '[c]ommunity [s]upport' are considered to be dynamic categories, because they are evidenced by current conditions." Ibid. The "static factors" relate to past criminal conduct and weigh more heavily under the RRAS than the dynamic factors. In re Registrant J.M., 167 N.J. 490, 500 (2001).

The "[s]eriousness of [o]ffense" category takes into account: (1) degree of force; (2) degree of contact; and (3) age of the victim(s). C.A., 146 N.J. at 103. The "[o]ffense [h]istory" category covers: (4) victim selection; (5) number of offenses/victims; (6) duration of offensive behavior; (7) length of time since last offense; and (8) any history of anti-social acts. Ibid. The "[c]haracteristics of [o]ffender" category accounts for the registrant's: (9) response to treatment and (10) substance abuse. Id. at 103-04. The final category, "[c]ommunity [s]upport" considers a registrant's: (11) therapeutic support; (12) residential support; and (13) employment/educational stability. Id. at 104.

"Each factor is assigned a risk level of low (0), moderate (1), or high (3), and '[t]he total for all levels within a category provides a score that is then weighted based on the particular category.'" A.A., 461 N.J. Super. at 402 (alteration in original) (emphasis omitted) (quoting C.A., 146 N.J. at 104). "An

6

RRAS score [totaling] 0 to 36 is low risk; 37 to 73 moderate risk; and 74 or more, high risk." T.T., 188 N.J. at 329 (citing Guidelines 4).

The RRAS Manual explains category nine, response to treatment, "is related to likelihood of reoffense. All else equal, a good response to treatment indicates less risk of reoffense." Guidelines 7. The RRAS Manual expressly provides "[a] therapist's report is necessary to rate this criterion." Ibid. High risk might be found, for example, if the "therapist indicates no current progress; one or more offenses committed while in treatment." Ibid.

We conclude the court misapplied its discretion by scoring A.M. high risk on category nine based on the current record. There is no dispute the State did not provide a therapist's report to support such a finding as required by the RRAS Manual. Because category nine is a "dynamic category," C.A., 146 N.J. at 103, it was improper to find A.M. was "high risk" based on prior classification orders. The dynamic categories must be evaluated based on "current conditions as found at the time the registrant's risk to re-offend is assessed." In re Registrant H.M., 343 N.J. Super. 219, 223 (App. Div. 2001) (citing C.A., 146 N.J. at 103).

The State bears the burden of proving a registrant's risk to the community and the scope of notification necessary to protect the community by clear and convincing evidence. R.F., 317 N.J. Super. at 383-84. Here, the State did not

provide evidence sufficient to support its proposed scoring of category nine. We are convinced, based on the lack of evidence presented, the court mistakenly concluded the State proved by clear and convincing evidence A.M. was properly scored high risk on category nine.

We reverse the court's June 28, 2024 order and remand for a full Megan's Law classification hearing. Nothing in our opinion is intended to limit the scope of that hearing, including the arguments or evidence either side may advance. As a result of our decision, we need not reach A.M.'s remaining arguments regarding the entry of the court's order.

Reversed and remanded for further proceedings in conformity with this opinion.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-4020-23